IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 47332-1-II |
| Respondent, | |
| v. | UNPUBLISHED OPINION |
| STEVEN K. EDWARDS, | |
| Appellant. | |

BJORGEN, C.J. — Steven Edwards appeals two of his four convictions—one for first degree assault, the other for first degree burglary. He argues that the convictions were not supported by sufficient evidence. Edwards also filed a statement of additional grounds (SAG), arguing that a sentencing enhancement for being armed with a firearm during the commission of his crimes led to the imposition of a clearly excessive sentence. We hold that sufficient evidence supported Edwards' convictions and that his sentence was not clearly excessive. Accordingly, we affirm.

FACTS

In October 2013, Peter Lahmann approached his truck, parked in southeast Tacoma, and saw Edwards and a female near the vehicle. The two saw Lahmann and immediately fled. Lahmann inspected the truck, discovered that his cell phone was missing, and took off in pursuit.

As he ran after Edwards and the female, Lahmann heard gunshots, though he did not initially recognize the sound. He then saw Edwards pointing a firearm at him. Edwards said, "I'm going to kill you if you don't quit following me." Report of Proceedings (RP) at 208. Edwards then proceeded to fire at Lahmann.

Two men drove up to Lahmann in a different truck and asked him if Edwards was shooting at him. He said yes, asked them to call the police, and ran off after Edwards again. Edwards continued to fire at Lahmann, and several people nearby witnessed the shooting.

Lahmann eventually lost sight of Edwards and the female. However, the men in the truck saw the two enter a nearby garage-apartment and told Lahmann. The police arrived, and Lahmann and the men in the truck directed them to the garage. When confronted by police, Edwards admitted he had stolen Lahmann's cell phone. He was arrested, and police subsequently searched the garage-apartment. They found the cell phone as well as a semiautomatic handgun, which matched a bullet casing found in the street.

Edwards' mother resided in the garage-apartment to which he fled. Edwards was prohibited by a protection order from coming within 500 feet of her residence or having contact with her. Despite that order, he had been with his mother at the residence earlier in the day.

The State charged Edwards with first degree assault, first degree robbery, first degree burglary, and unlawful possession of a firearm. For each charge except that of unlawful possession, the State also charged Edwards with a sentencing enhancement for the use of a firearm in the commission of the crime. The jury found Edwards guilty on all counts and found that he committed the crimes with a firearm.

The State sought a high-end sentence of 678 months' confinement. Because Edwards had a prior conviction with a firearm sentencing enhancement, each of the three enhancements added 120 months to his sentence, for a total of 360 months. The sentencing court imposed an exceptional downward sentence of 420 months' confinement, which included 60-month concurrent sentences for each underlying crime in addition to the 120-month enhancements.

Edwards appeals his convictions for assault and burglary and his sentence.

ANALYSIS

I. SUFFICIENCY OF THE EVIDENCE

Edwards challenges the sufficiency of the evidence underlying his convictions for first degree assault and first degree burglary. He argues that the evidence presented at trial did not support the necessary finding of intent for either crime. We disagree.

Evidence is sufficient to support a criminal conviction if any rational jury could have found the elements of the crime beyond a reasonable doubt. *State v. Richie*, 191 Wn. App. 916, 925, 365 P.3d 770 (2015). In evaluating sufficiency, we view the evidence in the light most favorable to the State, assuming the truth of the State's evidence and drawing all reasonable inferences from that evidence. *Id.* We consider circumstantial evidence as reliable as direct evidence, and we do not disturb the jury's resolution of conflicting testimony and evaluation of witness credibility or persuasiveness. *State v. Lawson*, 185 Wn. App. 349, 354, 340 P.3d 979 (2014), *cert. denied*, 136 S. Ct. 1177 (2016).

"A person acts with intent or intentionally when he or she acts with the objective or purpose to accomplish a result which constitutes a crime." RCW 9A.08.010(1)(a). This intent "may be inferred from the [defendant's] conduct where it is plainly indicated as a matter of logical probability." *State v. Delmarter*, 94 Wn.2d 634, 638, 618 P.2d 99 (1980).

A. Burglary: Intent

Edwards argues that the evidence before the jury was insufficient to prove that he intended to commit a crime while unlawfully entering or remaining in his mother's residence. We disagree.

To find that Edwards committed first degree burglary, the jury was required to find that he, "with intent to commit a crime against a person or property therein, . . . enter[ed] or

3

remain[ed] unlawfully in a building" while armed with a deadly weapon. RCW 9A.52.020(1).

Edwards does not dispute that he entered his mother's residence and remained therein in violation of a valid protection order, or that he was armed with a deadly weapon at the time.

The State's evidence must independently show both unlawful entry and the defendant's intent to commit a crime. *State v. Stinton*, 121 Wn. App. 569, 573, 89 P.3d 717 (2004). However, a defendant charged with burglary

> who enters or remains unlawfully in a building may be inferred to have acted with intent to commit a crime against a person or property therein, unless such entering or remaining shall be explained by evidence satisfactory to the trier of fact to have been made without such criminal intent.

RCW 9A.52.040. This permissive inference of intent is allowed if the jury finds that it is more likely than not, given the evidence. *Stinton*, 121 Wn. App. at 764.

Violation of a protection order can be the predicate crime for a burglary. *Stinton*, 121 Wn. App. at 576. Where such an order separately prohibits entry to the protected party's residence and contact with the protected party, one may commit burglary by entering the residence with the intent to contact the protected party. *Id*. at 575-77. Here, the protection order separately prohibited Edwards from coming near or having contact with his mother and from coming within or remaining within 500 feet of her residence.

Edwards argues that the evidence did not show that he entered his mother's residence with the intent to have contact with her. However, his mother testified that she was at the residence with Edwards the morning of the incident and that when he left the residence she was still inside. Viewed in the light most favorable to the State, this testimony allows for a reasonable inference that Edwards believed his mother was still at the house. Given such a belief, one could similarly infer that he intended to come near or make contact with his mother at

4

the residence. These inferences were sufficient for the jury to apply the permissive inference that Edwards intended to come near or contact his mother in violation of the protection order.

Edwards also argues that his intent may not be inferred from evidence that is patently equivocal, citing *State v. Jackson*, 112 Wn.2d 867, 774 P.2d 1211 (1989). *Jackson*, however, dealt with a conviction for *attempted* burglary and held that an inference of intent to commit a crime within a building cannot rest only on the defendants' shattering of a window in the door. 112 Wn.2d at 876. Significantly, the court held that "[i]n order to give an instruction that an inference of an intent to commit a crime existed in a burglary case, there must be evidence of entering or remaining unlawfully in a building." *Jackson*, 112 Wn.2d at 876. Here, the evidence shows that Edwards entered and remained in his mother's residence unlawfully, in violation of the no-contact order. Thus, *Jackson* does not bar the inference that Edwards entered the residence intending to contact his mother.

For these reasons, we hold that the evidence was sufficient to support a finding that Edwards entered the residence with the intent to commit a crime separate from the entry itself.

B.    Assault: Intent

Edwards argues that the evidence before the jury was insufficient to establish his intent to inflict great bodily harm on Lahmann. We disagree.

To find that Edwards committed first degree assault, the jury was required to find that he "[a]ssault[ed] another with a firearm or any deadly weapon or by any force or means likely to produce great bodily harm or death," and that he did so with intent to inflict "great bodily harm." RCW 9A.36.011(1)(a). Edwards does not dispute that he fired a firearm at Lahmann.

A jury may infer that a defendant intended to, at least, inflict great bodily harm on the victim where the evidence shows that the defendant fired a firearm at the victim. *State v. Mann*,

157 Wn. App. 428, 439, 237 P.3d 966 (2010). Here, several different witnesses testified that they saw Edwards fire his weapon at Lahmann multiple times as Edwards fled. In addition, police found a firearm in the garage-apartment to which Edwards fled and matched it to bullet casings found along the path of his flight. This evidence was sufficient to establish beyond a reasonable doubt that Edwards fired at Lahmann and therefore sufficiently supports an inference that he intended to inflict great bodily harm.

Further, Lahmann testified that Edwards verbally threatened to kill him if he continued his pursuit. A defendant's threat to kill the victim is powerful circumstantial evidence that later dangerous conduct toward that victim was intended to be deadly. *See State v. Gallo*, 20 Wn. App. 717, 729, 582 P.2d 558 (1978). While Edwards contends that both his threat and the shots he fired were intended only to scare Lahmann, we must view the evidence in the light most favorable to the State. Viewed in that light, the evidence is sufficient to establish beyond a reasonable doubt that Edwards intended to inflict great bodily harm on Lahmann.

## II.     SAG CLAIM: EXCESSIVE SENTENCE

In his SAG, Edwards argues that the addition of 360 months to his sentence as a result of the three firearm enhancements is excessive. He points out that he previously received only an 18-month enhancement for using a firearm in the course of a prior offense. We hold that Edwards' sentence was required by statute and is not clearly excessive.

A sentence is clearly excessive if it is clearly unreasonable or its length "'shocks the conscience'" in light of the record. *State v. Knutz*, 161 Wn. App. 395, 410-11, 253 P.3d 437 (2011) (quoting *State v. Kolesnik*, 146 Wn. App. 790, 805, 192 P.3d 937 (2008)). We review a sentencing court's imposition of an exceptional sentence for an abuse of discretion. *Knutz*, 161

Wn. App. at 410. A court abuses its discretion by exercising its authority on untenable grounds or for untenable reasons. *Id*.

Edwards appears to believe that the disparity between his earlier 18-month enhancement and his current 120-month enhancements indicates an excessive sentence. However, in both cases Edwards was properly sentenced under the applicable statutes.

RCW 9.94A.533(3) governs sentencing enhancements for the use of firearms in the commission of a crime.[1] The statute requires enhancements of five years (60 months) for the use of a firearm in a class A felony, RCW 9.94A.533(3)(a), and 18 months for the use of a firearm in the commission of a class C felony, RCW 9.94A.533(3)(c). The statute also provides that any such sentencing enhancement shall be doubled if the defendant has previously been sentenced for a deadly weapon enhancement. RCW 9.94A.533(3)(d).

In 2008, Edwards was convicted of 15 counts of second degree identity theft and 2 counts of unlawful possession of a controlled substance. Eighteen months were added to his sentence for his use of a firearm in the commission of one of the counts of identity theft. Second degree identity theft is a class C felony, RCW 9.35.020, and therefore under RCW 9.94A.533(3)(c) eighteen months was the applicable enhancement. However, first degree burglary, first degree assault, and first degree robbery are all class A felonies. RCW 9A.52.020(2); RCW 9A.36.011(2); RCW 9A.56.200(2). Therefore, under RCW 9.94A.533(3)(a), five years is the applicable enhancement to Edwards' current sentence. Because Edwards was previously convicted of a firearm sentencing enhancement, that time is doubled under RCW

---

[1] Our legislature has amended RCW 9.94A.533 three times since the sentencing in this case. However, none of the amendments altered the relevant portions of subsection 3.

9.94A.533(3)(d), resulting in a statutorily required enhancement of ten years (one hundred twenty months).

Edwards received three separate firearm sentencing enhancements of 120 months. Under RCW 9.94A.533(3)(e), the sentencing court was required to impose these as consecutive additions to Edwards' sentence, to be served subsequently to his four concurrent 60-month sentences for the underlying crimes. The sentencing court did not abuse its discretion by imposing the consecutive sentencing enhancements as required by statute.

Further, Edwards' total sentence is not one that shocks the conscience in light of the record. Taking into account the lengthy additions required for the firearm enhancements, the sentencing court imposed an exceptional downward sentence for the underlying crimes, imposing the mandatory minimum 60 months' confinement for Edwards' assault conviction and imposing concurrent 60-month terms for his other convictions. RCW 9.94A.540(1)(b).[2]

Given the strictures of the applicable statutes and the resulting length of Edwards' enhanced sentences, the sentencing court's decision to impose a sentence below the statutory range for Edwards' underlying crimes significantly mitigated the severity of his sentence. We cannot say that Edwards' lengthy resulting sentence shocks the conscience in light of the record before us. His sentence was the result of his decision to use a firearm to commit serious crimes despite a court order that he not possess such a weapon. Moreover, Edwards' extensive criminal history supports the imposition of harsh punishment. Despite these factors, the sentencing court imposed a sentence far below the 678 months' confinement requested by the State. We hold that Edwards' 420-month sentence, while severe, is not clearly excessive.

---

[2] As with RCW 9.94A.533, our legislature has amended RCW 9.94A.540 since the sentencing in this case. The amendments were not to any language relevant here.

CONCLUSION

Edwards' convictions for first degree burglary and first degree assault were supported by sufficient evidence. His sentence, enhanced due to his use of a firearm in the commission of his crimes, was not clearly excessive. We affirm the challenged convictions and sentence.

A majority of the panel having determined that this opinion will not be published in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Bjorgen, C.J.

We concur:

Worswick, J.

Lee, J.